UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| THOMAS A. GIORDANO,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CAPSTONE DIAGNOSTICS, LLC; SPARROW HEALTHCARE, LLC; and GENUS 3 HOLDINGS, LLC,<br><br>　　　　Defendants. | CASE NO.: |

## CIVIL ACTION COMPLAINT

Plaintiff, Thomas A. Giordano ("Plaintiff"), through his undersigned counsel, hereby files this Civil Action Complaint against Defendants, Capstone Diagnostics, LLC ("Capstone"), Sparrow Healthcare, LLC ("Sparrow"), and Genus 3 Holdings, LLC ("Genus") (collectively "Defendants"), and says as follows:

### I.　Nature of Plaintiff's Claims

1.　Plaintiff brings this action to recover unpaid sales commissions from Defendants in excess of $5,000,000.

2.　Plaintiff also seeks a declaratory judgment stating that he is not bound by a non-solicitation agreement or any other type of restrictive covenant, in light of Defendants intentional and ongoing failure to pay him wages due and owing.

### II.　The Parties

3. Plaintiff is an adult individual and citizen of the State of Florida, residing therein at 8600 Sioux Trail, Kissimme, Florida 34747.

4. Capstone is a limited liability company organized under the laws of the State of Georgia, with its principal place of business located at 8601 Dunwoody Place, Suite 444, Atlanta, Georgia 30350. Upon information and belief, Capstone's member(s) are citizens of the State of Georgia.

5. Sparrow is a limited liability company organized under the laws of the State of Texas, with its principal place of business located at 2408 Timberloch Place, Suite B1, The Woodlands, Texas 77380-1060. Upon information and belief, Sparrow's member(s) are citizens of the State of Texas.

6. Genus is a limited liability company organized under the laws of the State of Texas, with its principal place of business located at 16801 Addison Road, Suite 100, Addison, Texas 75001. Upon information and belief, Genus's member(s) are citizens of the State of Texas.

7. Capstone, Sparrow, and Genus constitute joint employers and/or a single employer under Florida law because: (i) upon information and belief, they share common owners and intermingle assets; (ii) they each dictated the terms and conditions of Plaintiff's employment, including his compensation; and (iii) they each exercised substantial control over the manner in which Plaintiff performed his job responsibilities, as set forth in further detail below.

### III. Jurisdiction and Venue

8. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Plaintiff is a Florida resident. Capstone is a citizen of Georgia, and Sparrow and Genus are citizens of Texas. Therefore, complete diversity of citizenship exists.

9. The amount in controversy, exclusive of interest and costs, substantially exceeds the sum or value of $75,000.

10. Venue in the Middle District of Florida is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly conduct business in this District, Plaintiff was employed by Defendants in this District, a substantial part of the events upon which Plaintiff's claims are based occurred in this District, and the contracts upon which Plaintiff's claims are based were entered into and performed by Plaintiff in this District.

### IV. Facts

#### A. Background On Capstone And Plaintiff's Employment

11. On its website (www.capstonehealthcare.com/who-we-are/), Capstone describes itself as "an independent, state of the art laboratory in Atlanta, Georgia [providing] both a full-service urine drug testing lab and a leading-edge genetic lab…."

12. After graduating from the U.S. Military Academy at West Point and serving as an officer in the Army for five (5) years, on July 10, 2018, Plaintiff, a disabled veteran, accepted an offer of employment to work for Capstone.

13. At all times material, even though he held different job titles, Plaintiff's primary job duty as a Capstone employee was to generate sales and revenue.

14. The customers targeted by Plaintiff primarily included doctors' offices, nursing homes, assisted living facilities, and long-term care facilities.

15. Plaintiff's job was to procure contracts from customers so that they would send samples to Capstone for laboratory testing.

16. Plaintiff's initial annual salary at Capstone was $52,000.

17. Capstone increased Plaintiff's salary to $75,000 in 2019 and $100,000 in 2021.

18. In addition to his salary, Capstone paid sales commissions to Plaintiff.

19. Indeed, the vast majority of Plaintiff's compensation at Capstone consisted of commissions.

20. Capstone provided Plaintiff with its 2019 Sales Commission Plan ("SCP"), a true and correct copy of which is attached hereto as Exhibit A.[1]

---

[1] Upon information and belief, Capstone, as Plaintiff's former employer, is in possession of a fully-executed copy of the SCP.

21. At all times material, Capstone was duty-bound to pay commissions to Plaintiff in accordance with the terms and conditions set forth in the SCP.

22. Plaintiff's last day of work at Capstone was October 11, 2021.

**B.   Capstone's Failure To Pay Commissions**

23. At all times material, Plaintiff's job performance – especially his ability to generate sales and revenue – was nothing less than stellar.

24. In 2020, fueled by an unprecedented demand for COVID-19 laboratory testing, Plaintiff's sales and revenue volume increased exponentially.

25. In 2020 and 2021, combined, Plaintiff generated $7,107,500 in revenue for Capstone.

26. Pursuant to the SCP, Plaintiff earned commissions of $1,421,500 for 2020 and 2021, combined.

27. However, for 2020 and 2021, instead of paying Plaintiff the commissions due and owing to him, Capstone made partial payments to Plaintiff in the total amount of $1,184,292.50.

28. Accordingly, Capstone owes additional commissions to Plaintiff for 2020 and 2021 in the amount of $297,207.50.

29. Plaintiff repeatedly complained to Capstone about not being paid the commissions he had earned.

30. Capstone dismissed Plaintiff's complaints and told Plaintiff that he had already been paid enough money.

31. Based upon the above, Capstone has failed and refused to pay commissions to Plaintiff for 2020 and 2021 of approximately $297,207.50.

32. There is no justification or excuse for Capstone's refusal to pay Plaintiff's commissions.

33. Capstone's ongoing failure to pay Plaintiff's commissions is wanton and egregious.

### C. President's Club Bonuses

34. Pursuant to the SCP, Capstone agreed to pay Plaintiff a "President's Club" bonus of $50,000 per year in any year where Plaintiff's sales growth exceeded $2,000,000.

35. Plaintiff's sales growth far exceeded $2,000,000 in 2020 and 2021.

36. Accordingly, Plaintiff earned and should have been paid a President's Club bonus of $50,000 in 2020 and 2021, for a total of $100,000.

37. Plaintiff repeatedly complained to Capstone about not being paid the President's Club bonuses he had earned.

38. Capstone dismissed Plaintiff's complaints and told Plaintiff that he had already been paid enough money.

39. Based upon the above, Capstone has failed and refused to pay President's Club bonuses to Plaintiff for 2020 and 2021 of $100,000.

40. There is no justification or excuse for Capstone's refusal to pay Plaintiff's President's Club bonuses.

41. Capstone's ongoing failure to pay Plaintiff's President's Club bonuses is wanton and egregious.

**D.   Unused PTO**

42. Pursuant to its long-standing, well-established policy and practice, upon termination of employment, Capstone pays its employees for all accrued, unused paid time off ("PTO").

43. On Plaintiff's last day of work at Capstone, October 11, 2021, Plaintiff had twenty-one (21) accrued, unused PTO days.

44. Capstone has failed to pay Plaintiff for his twenty-one (21) accrued, unused PTO days, equal to approximately $8,333.33.

45. There is no justification or excuse for Capstone's refusal to pay Plaintiff's PTO.

46. Capstone's ongoing failure to pay Plaintiff's PTO is wanton and egregious.

**E.   The Agreement To Pay Plaintiff A 20% Commission For Samples Sent To Other Laboratories**

47. While Plaintiff was employed by Capstone, Capstone instructed Plaintiff to send specimens to other laboratories for testing.

48. As set forth in detail below, the laboratories specified by Capstone included Cleargate Labs ("Cleargate"), Sparrow, and Genus.

49. Capstone verbally agreed Plaintiff would be paid commissions pursuant to the SCP for all specimens that Plaintiff sent to Cleargate, Sparrow, and Genus.

50. Capstone specifically and repeatedly promised Plaintiff that he would be paid a commission equal to 20% of revenue for all new customers pursuant to the SCP for samples sent to Cleargate, Sparrow, and Genus.

51. Plaintiff accepted Capstone's offer, and proceeded to generate new customers and send samples to Cleargate, Sparrow, and Genus, pursuant to the instructions of Capstone.

### G. Cleargate and Sparrow

52. In 2019, Capstone instructed Plaintiff to send samples to Cleargate.

53. As instructed by Capstone, Plaintiff sent samples to Cleargate for testing from 2019 to 2020.

54. Plaintiff earned approximately $100,000 plus in commissions for the samples that he sent to Cleargate.

55. Instead of paying Plaintiff the aforesaid $100,000 plus pursuant to the SCP, on April 8, 2020, Capstone made Plaintiff an employee of Sparrow with a $100,000 salary.

56. Accordingly, Plaintiff began receiving salary and commission payment from both Capstone and Sparrow, which once again, constitute joint employers and/or a single employer.

57. When Plaintiff became an employee of Sparrow on April 8, 2020, Capstone instructed Plaintiff to stop sending samples to Capstone and to start sending samples to Sparrow.

58. A true and correct copy of the April 8, 2020 Sparrow job offer letter stating that Plaintiff would be paid "$100,000 plus commission" is attached hereto as Exhibit B.

59. As instructed by Capstone, Plaintiff sent samples to Sparrow for testing from April 2020 until his last day of employment, October 11, 2021.

60. In 2020 and 2021, Plaintiff generated $25,947,000 in revenue for Capstone and Sparrow, combined.

61. Pursuant to the SCP, Capstone and/or Sparrow were required to pay Plaintiff commissions of approximately $5,200,000 for the samples that Plaintiff sent to Sparrow.

62. Instead of paying Plaintiff the commissions of approximately $5,200,000 that he had earned in connection with sending samples to Sparrow, Sparrow made partial payments to Plaintiff in the total amount of $890,000 for 2020 and 2021, combined.

63. Accordingly, Capstone and Sparrow owe, and have failed and refused to pay, commissions to Plaintiff for 2020 and 2021 in the approximate amount of $4,200,000.

64. When Plaintiff repeatedly complained to Sparrow and Capstone about not being paid the commissions he had earned, Sparrow and Capstone dismissed Plaintiff's complaints and refused to pay Plaintiff the amounts owed to him.

65. There is no justification or excuse for Sparrow and Capstone's refusal to pay Plaintiff's commissions.

66. Sparrow and Capstone's ongoing failure to pay Plaintiff's commissions is wanton and egregious.

**H.  Genus**

67. In 2020, Capstone instructed Plaintiff to send specimens to Genus for testing.

68. As instructed by Capstone, Plaintiff sent specimens to Genus for testing in 2019 and 2020.

69. Capstone failed to pay commissions to Plaintiff of approximately $417,000 for samples that Plaintiff sent to Genus.

70. Plaintiff repeatedly complained to Capstone about not being paid the commissions he had earned.

71. Capstone dismissed Plaintiff's complaints and told Plaintiff that he had already been paid enough money.

72. There is no justification or excuse for Capstone's refusal to pay Plaintiff's commissions.

73. Capstone's ongoing failure to pay Plaintiff's commissions is wanton and egregious.

I. **Facts Applicable To Plaintiff's Request For A Declaratory Judgment**

74. Plaintiff's wife gave birth to their first child, a son, on September 25, 2021.

75. Plaintiff took a two (2) week leave of absence to assist his wife and bond with their newborn child.

76. When Plaintiff returned from his leave of absence on October 11, 2021, Capstone abruptly terminated his employment.

77. In a termination letter dated October 11, 2021, a true and correct copy of which is attached hereto as Exhibit C, Capstone falsely accused Plaintiff of working for a competing laboratory.

78. Capstone's accusation that Plaintiff worked for a competing laboratory is false and completely baseless.

79. The truth is that the United States Department of Justice had been conducting an ongoing fraud investigation of Capstone, and Capstone terminated Plaintiff because Capstone believed that Plaintiff was a whistleblower.

80. In its October 11, 2021 termination letter, Capstone stated, in pertinent part, as follows:

> As you know, you are party to an Employment Agreement and an Employee Confidentiality and Network Access Agreement with the Company. Those agreements are enclosed for your reference. Please note that you have obligations under those agreements that continue beyond the end of your employment. I specifically want to remind you of your obligations to protect confidential information and not to solicit customers, clients, or employees. (*See* the Employee Confidentiality and Network Access Agreement, and Sections 5, 6, 7, 8 and 11 of the Employment Agreement.) The Company takes those obligations very seriously and will take swift action, including getting a court order to stop your activities and seeking monetary compensation, in response to any breach or threatened breach.

*See* Exhibit C.

81. Thus, Capstone had alleged that Plaintiff was bound by two (2) agreements, including: (i) an Employment Agreement; and (ii) an Employee Confidentiality and Network Access Agreement (collectively, the "Restrictive Covenant Agreements").

82. Contrary to Capstone's representations set forth therein, neither agreement was attached to the termination letter.

83. Plaintiff is in possession of his Employee Confidentiality and Network Access Agreement. A true and correct copy is attached hereto as Exhibit D.

84. The Employee Confidentiality and Network Access Policy does not include a non-solicitation covenant or any other restrictive covenant.

85. Moreover, because Capstone has materially and intentionally breached its obligation to pay all commissions due and owing to Plaintiff, Capstone may not insist that Plaintiff abide by any of the provisions set forth in the Employee Confidentiality and Network Access Policy.

86. Plaintiff is not in possession of any Employment Agreement and does not have any recollection of receiving or executing such an agreement.

87. Accordingly, on October 11, 2021 and again on October 14, 2021, Plaintiff transmitted emails to Capstone requesting that they furnish a copy of the purported Employment Agreement.

88. To date, Capstone has failed and refused to furnish any Employment Agreement to Plaintiff.

89. Because Capstone has materially and intentionally breached its obligation to pay all commissions due and owing to Plaintiff, to the extent that an

Employment Agreement actually exists, Capstone may not insist that Plaintiff abide by any of its provisions.

90. Capstone's October 11, 2021 letter was prepared and transmitted for the sole purpose of wrongfully and intentionally interfering with Plaintiff's right to freely pursue employment and business activities, including but not limited to business relationships with any of the customers that he generated while working at Capstone.

91. Capstone's October 11, 2021 letter is a misguided attempt by Capstone to create an after-the-fact restrictive covenant.

92. Capstone's assertion that Plaintiff remains legally bound by a non-solicitation covenant is false, and clearly so.

93. Capstone knew, or reasonably should have known, that any the non-solicitation covenant (to the extent that one actually exists) is unenforceable as a matter of law because of the fact that Capstone materially breached its contractual obligations by failing to pay commissions due and owing to Plaintiff.

94. It is axiomatic that a party who materially breaches a contract cannot thereafter insist upon the other party's strict performance.

95. Capstone did not act in good faith when sending correspondence to Plaintiff on October 11, 2021.

## COUNT I
## BREACH OF CONTRACT / UNPAID WAGES

96. Plaintiff incorporates by reference the allegations of the preceding paragraphs as if set forth herein at length.

97. The SCP is a legally binding contract under Florida law.

98. Likewise, Defendants agreement to pay Plaintiff commissions for the revenue that he generated for Defendants by sending laboratory samples to Cleargate, Sparrow, and Genus, which Plaintiff did, constitutes a legally binding contract under Florida law.

99. Pursuant to the SCP and the Parties agreement to pay Plaintiff for the revenue that he generated for Defendants by sending laboratory samples to Cleargate, Sparrow, and Genus, Defendants are legally bound to pay Plaintiff the commissions and President's Club Bonuses set forth above.

100. Plaintiff has repeatedly demanded payment of the monies owed to him pursuant to the SCP and his agreement with Defendants based upon the revenue that Plaintiff generated for Defendants by sending laboratory samples to Cleargate, Sparrow, and Genus, but Defendants have simply ignored Plaintiff's demands for payment.

101. Without justification or excuse, Capstone has materially breached the SCP and the Parties agreement, as described above, by failing to pay Plaintiff the aforesaid wages.

102. Capstone's breach of the SCP and the Parties' agreement, as described above, has caused substantial damages to Plaintiff, in excess of $5,000,000 for unpaid commissions and bonuses, along with approximately $8,333.33 in unpaid PTO.

**WHEREFORE**, Plaintiff, Thomas A. Giordano, respectfully requests that the Court enter judgment in his favor and against Defendants, along with an award of monetary damages in an amount to be determined at trial, consequential damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs pursuant to Fl. Stat. § 448.08.

## COUNT II
## UNJUST ENRICHMENT / QUANTUM MERUIT

103. Plaintiff incorporates by reference the allegations of the preceding paragraphs as if set forth herein at length.

104. To the extent that a valid contract did not exist between the Parties, which is not the case, Plaintiff conferred benefits upon Defendants by the actions described above, including but not limited to Plaintiff's provision of services to Defendants as their employee and the generation of many millions of dollars in revenue.

105. Defendants received, accepted and retained said benefits from Plaintiff, without paying him the commissions that he is due and owed.

106. By the actions described above, including but not limited to Defendants' repeated and continued failure to pay wages to Plaintiff, Defendants have been unjustly enriched by the efforts of Plaintiff, all to the detriment of Plaintiff.

107. Plaintiff has been damaged by the actions of Defendants described above in circumstances where it would be inequitable and unjust for Defendants to retain the benefits conferred upon it by Plaintiff without compensating Plaintiff for said benefits.

108. Defendants has acted maliciously, wantonly, and egregiously.

**WHEREFORE**, Plaintiff, Thomas A. Giordano, respectfully requests that the Court enter judgment in his favor and against Defendants, along with an award of monetary damages in an amount to be determined at trial, consequential damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs pursuant to Fl. Stat. § 448.08.

## COUNT III
## DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201

109. Plaintiff incorporates by reference the allegations of the preceding paragraphs as if set forth herein at length.

110. As set forth above, Defendants, who jointly employed Plaintiff, have failed to pay Plaintiff a substantial amount of wages, in violation of Florida law.

111. To the extent that it exists, the Employment Agreement referenced above was and is dependent upon Defendants paying Plaintiff the wages owed to him.

112. Likewise, the Employee Confidentiality and Network Access Agreement was and is dependent upon Defendants paying Plaintiff the wages owed to him.

113. Therefore, as a result of Defendants' failure to pay Plaintiff the commissions and wages due and owing to him under Florida law, the Restrictive Covenant Agreements are null and void and cannot be enforced against Plaintiff.

114. The enforceability of the Restrictive Covenant Agreements is an issue appropriate for judicial determination under 28 U.S.C. § 2201.

115. The controversy at issue involves substantial rights of the Parties to this action.

116. A judgement of this Court will serve a useful purpose in clarifying and settling the legal relations at issue between the Parties.

117. A judgement of this Court will determine, terminate, and afford relief from uncertainty and controversy giving rise to this action.

**WHEREFORE**, Plaintiff, Thomas A. Giordano, respectfully requests that the Court enter declaratory judgement in the form of an Order pursuant to 28

U.S.C. § 2021, declaring that Plaintiff is not bound by any of the restrictive covenants set forth in the Employment Agreement (if any exists) or the Employee Confidentiality and Network Access Agreement between Plaintiff and Capstone, along with any other relief the Court deems just and appropriate.

## DEMAND FOR TRIAL BY JURY

A jury trial is demand as to all claims set forth herein.

Respectfully submitted on November 2, 2021

/s/ *Christina Bredahl Gierke*
Christina Bredahl Gierke
FL Bar No.: 55462
**Cole, Scott & Kissane, P.A.**
1900 Summit Tower Blvd., Ste. 400
Orlando, Florida 32810
Tel: 321-972-0025
Fax: 321-972-0099
christina.gierke@csklegal.com
victoria.mcfarland@csklegal.com
*Attorney for Plaintiff*